UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POOF-SLINKY, LLC,

        Plaintiff,

        v.

A.S. PLASTIC TOYS CO., LTD., et al.,

        Defendants.

**OPINION AND ORDER**

19 Civ. 9399 (ER)

Ramos, D.J.:

    Poof-Slinky, LLC brought this action against numerous Defendants for trademark infringement of its iconic toy, the Slinky.  Doc. 5.  Pending before the Court is a motion to dismiss by a portion of those Defendants, the Orel Defendants,[1] for lack of personal jurisdiction and failure to state a claim.  Doc. 20.  For the reasons set forth below, the Orel Defendants' motion is denied.

## I.   Factual Background and Procedural History

    Invented in the 1940s, the Slinky is a classic children's toy made of a precompressed helical spring that, when prompted, can perform a number of tricks, including descending a flight of stairs.  Doc. 5 at ¶¶ 7-8.  It has been featured on TIME

---

[1] The thirty-four Orel Defendants are represented by Sergei Orel and include A.S. Plastic Toys Co. Ltd., Amy & Benton Toys And Gifts Co., Ltd., Believe-Fly Trading (Toys) Co., Ltd. Shantou, GREAT INTERNATIONAL TOYS LIMITED, Guangdong Hershey Spring Industrial Co., Hengjun Plastic Toys Manufactory, hhsmile Store, Longyan Lang Ling Hong Chuang Trading Co., Ltd., nbjustin Store, Ningbo ZhenRong International Trading Co., Ltd. (JUST IN), Shantou Chenghai Haoda Toys Co., Ltd., Shantou Chenghai Hengya Toys Co., Ltd., Shantou Chenghai Kaishenglong Toys Factory, Shantou Chenghai Pengcheng Toy Ind. Co., Ltd., Shantou Chenghai Sweet Baby Toys Firm, Shantou Chenghai Yuansheng Toys Industry Co., Ltd., Shantou Chenghai Yueqi Toys Firm, Shantou City Chenghai Xinbooming Toys Factory, Shantou H&C Toys & Crafs Manufactory, Shantou Jinyu Trading Co., Ltd., Shantou Kunyang Trading Co., Ltd., Shantou Longhu XuChang Toys Firm, Shantou Lucky Toys & Gift Firm, Shantou Mingtong Toys Industrial Co., Ltd., Shantou South Toys Factory, Shantou Tianyi Toys Industrial Co., Ltd., Shaoxing Jinlangte Sports Goods Co., Ltd., Shenzhen Gift Joint Promo Co., Ltd., Shenzhen X-World Technology Co., Ltd., Wenling Bestone Commodity Factory, Yiwu B&T Crafts & Arts Co., Ltd., Yiwu Power Import & Export Co., Ltd., Yiwu Qida Household Items Factory, and Zhangping TK Toys And Gifts Co., Ltd.

magazine's list of 100 Greatest Toys, has been included in the National Toy Hall of Fame, and is featured as part of the MoMa's Architecture and Design Collection. *Id.* at ¶ 9.  In addition, the Slinky Dog was a character in all four of Disney's Toy Story movies. *Id.*  Plaintiff, who retails Slinky products for $2.99 per single pack, has sold over 300 million products through Alex Toys LLC and major retailers like Target and Amazon. *Id.* at ¶¶ 9-11.  Plaintiff alleges that it owes the success of Slinky to the high-quality materials and processes it uses in production, as well as its own significant marketing, promotion and distribution efforts to develop consumer recognition and goodwill in the marketplace. *Id.* at ¶¶ 15-17.  Through Plaintiff's work, it has gained significant brand recognition, and has secured three federal trademark registrations to protect its rights.[2] *Id.* at ¶ 12.

      Plaintiff retained New Alchemy Limited ("NAL"), a company that researches intellectual property infringement, to determine whether counterfeit versions of its products could be found on Alibaba.com ("Alibaba") and AliExpress.com ("AliExpress").  *Id.* at Glossary, ¶ 29.  Alibaba and AliExpress are online marketplace platforms that allow sellers in China to advertise and sell products worldwide.  *Id.* at Glossary.  Defendants are individuals or businesses located in China but doing business in the United States, including New York, and elsewhere via user accounts on merchant storefronts on Alibaba and AliExpress.  *Id.* at ¶¶ 6, 24, 30.  Through NAL's research, Plaintiff discovered that Defendants were selling counterfeit Slinky products that were meant to confuse consumers and trade on the goodwill of Slinky.  *Id.* at ¶¶ 25, 30, 35-40.

---

[2] On November 17, 2003, Plaintiff acquired U.S. Trademark Registration Nos. 1,455,493 and 2,402,881 for Slinky and the Slinky Arch following its merger with James Industries, Inc. *Id.* at ¶ 13 & n.4, p. 31.  Plaintiff was then awarded the Trademark Registration No. 5,286,991 for the Rainbow Slinky on September 12, 2017. *Id.* at ¶ 13 & n.4, p. 29.

Between July and August 2019, NAL purchased counterfeit Slinky products from the Orel Defendants through their websites and over 20% of their purchases were ultimately shipped to New York. Doc. 20-1 at 7-9.

On October 10, 2019, Plaintiff moved *ex parte* seeking a temporary restraining order ("TRO"), an order restraining Defendants' assets with their financial institutions, an order to show cause why a preliminary injunction should not issue, an order authorizing bifurcated and alternative service and an order authorizing expedited discovery. Docs. 5, 10-15. The Court granted the TRO. Doc. 36 at 2.

The complaint asserts that the Court has personal jurisdiction over the Defendants under §§ 302(a)(1) and 302(a)(3) of the New York Civil Practice Law and Rules and Federal Rule of Civil Procedure 4(k). Doc. 5 at ¶ 3. According to Plaintiff, Defendants regularly conduct, transact or solicit business in New York, or derive substantial revenues from New York, such that asserting personal jurisdiction over them would not offend traditional notions of fair play and Due Process. *Id.* In addition, Plaintiff argues that Defendants should have reasonably expected their actions to have consequences in New York. *Id.* Plaintiff alleges that Defendants systematically target New York using their Alibaba and AliExpress accounts. *Id.* at ¶ 3a. Consumers across the United States and specifically in New York can view Defendants' websites, communicate with Defendants, place orders, receive invoices for and purchase products from Defendants for delivery in the United States and New York. *Id.* Plaintiff asserts that Defendants are sophisticated sellers who are aware of Slinky products and marks, sell counterfeit versions of Slinky products at below market prices, ship them to buyers in the United States and New York, and accept United States dollars for these sales. *Id.* at ¶¶ 3(b)-(e). Defendants' actions

mislead consumers into believing that their products are genuine Slinky products despite their having no affiliation with Plaintiff and being of lower quality, thereby damaging Plaintiff's reputation and causing economic losses.  *Id.* at ¶¶ 38-41, 78.  Based on these allegations, Plaintiff brought four causes of action against all Defendants for trademark counterfeiting, infringement of registered trademarks, and false designation of origin under the Lanham Act, and unfair competition under New York common law.  *Id.* at ¶¶ 44-82.

At a show cause hearing held on October 24, 2019, Orel appeared on behalf of sixteen Defendants (the "Original Orel Defendants").  Doc. 36 at 2.  The Court extended the TRO until November 25, 2019, ordered the Original Orel Defendants to oppose entry of a preliminary injunction by that date, and set a discovery deadline of November 7, 2019.  *Id.*  On November 26, 2019, Plaintiff informed the Court that the Original Orel Defendants had neither complied with the discovery deadline nor filed an opposition to its application for a preliminary injunction.  Doc. 16.  On November 27, 2019, the Orel Defendants, now comprised of thirty-four of the Defendants, moved to dismiss.  Doc. 20; *see supra* n.1.  On December 4, 2019, the Orel Defendants requested an extension of the deadlines for discovery and to file their opposition to a preliminary injunction.  Docs. 23-25.  On December 10, 2019, Plaintiff consented to the deadline extensions and requested an order extending the TRO against the Orel Defendants pending the outcome of their motion.  Doc. 27.  On December 13, 2019, the Court granted the parties' requests.  Doc. 28 at 2-3.

**II.     Standard**

       **A.     Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction. *Id*. As the Court evaluates a Rule 12(b)(2) motion, it must construe all of the plaintiff's allegations as true and resolves all doubts in his favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *accord Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

When ruling on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), district courts are likewise required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy the pleading standard under Fed. R. Civ. Pro. 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Thus, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

### III. Discussion

#### A. This Court Has Personal Jurisdiction over the Orel Defendants

The Orel Defendants, domiciled in China, and therefore foreign entities, argue that they are not subject to personal jurisdiction in New York. Doc. 20-1 at 11-14. Courts evaluating personal jurisdiction over foreign defendants take a two-step approach: *first*, the Court must determine if jurisdiction exists under the law of the forum state; *second*, if so, the Court must then evaluate whether the exercise of personal jurisdiction comports with Due Process under the United States Constitution. *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 571 (2d Cir. 2020) (*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)).

### i. New York's Long-Arm Statute

Plaintiff asserts personal jurisdiction under New York's long-arm statute, N.Y. C.P.L.R. § 302.[3]  Section 302(a)(1) provides "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state[.]"  To determine whether there is a basis for personal jurisdiction under § 302(a)(1), courts evaluate "the totality of the defendant's activity within the forum" and whether "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citations omitted).  Proving just one transaction in New York "is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Matter of James v. iFinex Inc.*, --- N.Y.S.3d ---, 2020 WL 3848130, *4 (1st Dep't July 9, 2020) (quoting *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (N.Y. 2006)); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (describing § 302 as a "single act statute").  As the New York Court of Appeals has noted, "it is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis."  *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 378 (N.Y. 2014) (citation omitted).

Plaintiff alleges that the Orel Defendants target New York using their accounts with Alibaba and AliExpress.  Doc. 5 at ¶ 3(a).  Plaintiff asserts that Defendants

---

[3] Because Plaintiff only asserts specific jurisdiction, the Court need not address the Orel Defendants' arguments regarding general jurisdiction.  Docs. 5 at ¶ 3; 20-1 at 12.

7

communicate with consumers, accept orders in United States dollars, and advertise, sell, and ship counterfeit products from their online marketplaces to New York. *Id.* at ¶¶ 3(a)-(d). These features render their websites highly interactive, long considered a sufficient basis for personal jurisdiction. *Smart Study Co., Ltd. v. lizhiwangluo16*, Nos. 19 Civ. 7725-29 (JGK), 2020 WL 3639659, at *4 (S.D.N.Y. July 6, 2020) ("[Defendants] have transacted business within the state [under § 302(a)(1)] by virtue of [their] operation of online user accounts and merchant storefronts through which customers in New York can view and purchase the counterfeit products at issue in this case."); *Pearson Educ., Inc. v. ABC Books, LLC*, No. 19 Civ. 7642 (RA), 2020 WL 3547217, at *6 (S.D.N.Y. June 30, 2020) ("As an initial matter, Online Marketplaces like eBay and Amazon are highly interactive websites that are widely available to United States customers, including those located in New York, and thus can serve as the basis for personal jurisdiction."); *Smart Study Co., Ltd. v. A Pleasant Trip Store*, No. 20 Civ. 1733 (MKV), 2020 WL 2227016, at *2-3 (S.D.N.Y. May 7, 2020) (finding operation of online marketplaces on Alibaba were highly interactive websites supporting personal jurisdiction); *Nat'l Hockey League v. Hockey Cup, LLC*, No. 18 Civ. 6597 (DLC), 2019 WL 130576, at *6 (S.D.N.Y. Jan. 8, 2019) ("Dewey and his companies have transacted business in New York by operating interactive websites through which consumers in New York can purchase the Stein, jerseys, and other products."); *Audiovox Corp. v. South China Enterprise, Inc.*, No. 11 Civ. 5142 (JS) (GRB), 2012 WL 3061518, at *3 (E.D.N.Y. July 26, 2012) ("[I]f a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction."). As the Southern District of New York

recently reinforced in *Mattel, Inc. v. Animefun Store*, No. 18 Civ. 8824 (LAP), 2020 WL 2097624, at *4 n.7 (S.D.N.Y. May 1, 2020), if a company "wish[es] to operate an interactive website accessible in New York, there is no inequity in subjecting [it] to personal jurisdiction here." (citing *Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002)).

In addition, Plaintiff contends, and the Orel Defendants admit, that NAL engaged in at least one transaction with each Orel Defendant to purchase allegedly counterfeit products for shipment to New York, Docs. *5* at ¶¶ 33-34 and 20-1 at 6-9, thus satisfying the requirement that a defendant engage in a "'single act' of selling counterfeit goods into New York" for purposes of § 302(a)(1). *Chloe*, 616 F.3d at 170; *Mattel v. Adventure Apparel*, No. 00 Civ. 4085 (RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (finding online sale of allegedly infringing product satisfied the "transacting any business" standard in a trademark infringement case).

The Orel Defendants' arguments to the contrary are unavailing. The Orel Defendants argue that most of NAL'S orders were never fulfilled and that the few orders that were completed were for a nominal amount of money. Doc. 20-1 at 6. However, neither circumstance is dispositive because "[t]he *offering* for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under" § 302(a)(1). *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009) (emphasis added); *see also A Pleasant Trip Store*, 2020 WL 2227016, at *3 (finding personal jurisdiction over all defendants where plaintiff had only consummated purchases with ten percent of them because defendants' websites were highly interactive).

The Orel Defendants further reason that purchases made by NAL at Plaintiff's behest are "trap purchases" and therefore insufficient to support specific jurisdiction. Doc. 20-1 at 13.  But that Plaintiff directed the purchase of the allegedly counterfeit products is irrelevant to the question of whether the Orel Defendants have purposefully availed themselves of doing business in this forum.  *Chloe*, 616 F.3d at 165 n.3 (noting manufactured purchases can form the basis of personal jurisdiction); *Cartier*, 598 F. Supp. 2d at 425 ("the fact that the purchaser happened to be an investigator in plaintiffs' employ does not go to the question whether [defendant] purposefully availed itself of the privilege of doing business in New York" and is "irrelevant"); *Adventure Apparel*, 2001 WL 286728, at *3 (finding "[t]he fact that the sale was made to an agent of Mattel is irrelevant" because defendant's activities via its interactive website were purposeful and there was a substantial relationship between that transaction and the trademark infringement claims).

Plaintiff has thus adequately alleged personal jurisdiction under New York's long-arm statute.

### ii. Due Process

Having found that Plaintiff has sufficiently established personal jurisdiction under § 302(a)(1), the Court turns to whether the exercise of personal jurisdiction in this case comports with Due Process.  Initially, the Court recognizes that "it would be a 'rare' case where New York C.P.L.R. § 302(a)(1) was satisfied by a defendant's transaction of business but the assertion of specific jurisdiction arising out of the transaction nonetheless violated due process."  *Nat'l Hockey League*, 2019 WL 130576, at *6 (citing *Licci*, 732 F.3d at 170).  The Due Process inquiry requires analyzing whether the

defendant has sufficient minimum contacts with the forum state to establish personal jurisdiction and whether exercising personal jurisdiction would be reasonable given the circumstances of this case. *Chloe*, 616 F.3d at 164-65. As with New York's long-arm statute, these minimum contacts must be related to Plaintiff's claims. *Id.* at 166 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("When a controversy is related to or arises out of a defendant's contacts with the forum, the Court has said that a relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction.") (citation omitted)). Reasonableness is then assessed using five factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant;
> (2) the interests of the forum state in adjudicating the case;
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and
> (5) the shared interest of the states in furthering substantive social policies.

*Id.* at 164 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).

Here, Plaintiff has asserted sufficient minimum contacts to satisfy Due Process for the same reasons that it satisfies the long-arm statute's requirements. Plaintiff alleges that the Orel Defendants operate highly interactive websites through Alibaba and AliExpress, through which they can converse with consumers in New York and sell allegedly infringing products to them, and that they have done so. Doc. 5 at ¶¶ 3, 3(a)-(e). *Chloe*, 616 F.3d at 171 (finding defendant had purposefully availed herself of the forum by selling one counterfeit Chloe bag and other products to consumers in New York); *A Pleasant Trip Store*, 2020 WL 2227016, at *3 ("Defendants have purposely

availed themselves of New York by marketing and selling products into New York through their internet storefronts" and therefore have satisfied the constitutional requirement of minimum contacts); *Cartier*, 598 F. Supp. 2d at 425-26 (finding distribution of magazines on flights in New York and one sale to a New York customer established "the minimum contacts required to ensure that haling plaintiffs into this Court comports with due process" in trademark infringement case).

The Orel Defendants' reliance on *SPV OSUS Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) is misplaced.  Doc. 20-1 at 13.  In *SPV OSUS Ltd.*, the Second Circuit acknowledged that "'[w]here the defendant has had only limited contacts with the state it *may* be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts[,]'" but did not set a definitive standard. *Id.* at 344 (*Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)) (emphasis added). *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 387 (S.D.N.Y. 2019).  Even if the proximate cause standard applied, *SPV OSUS Ltd.* is distinguishable as it involved "a handful of communications and transfers of funds" in support of a fraud action, whereas this case involves a highly interactive website through which the Orel Defendants could advertise the allegedly offending products, communicate with consumers, and sell to customers in the forum state in violation of trademark law.  882 F.3d at 345; Doc. 5 at ¶¶ 3, 3(a)-(e).  This Court considers such contacts far more substantial.  *See Nat'l Hockey League*, 2019 WL 130576, at *6 (applying the proximate cause standard in trademark case involving a single sale from a highly interactive website and finding exercise of personal jurisdiction comported with Due Process).

Once minimum contacts are shown, "the exercise of jurisdiction is favored" unless defendants present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *A Pleasant Trip Store*, 2020 WL 2227016, at *3 (citing *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). Here, the Orel Defendants raise no arguments on the reasonableness factors in their motion so "[t]he Court will not endeavor to find additional hardships on the Defendant where they have not otherwise brought them forward; the Plaintiff's election of forum in this case is dispositive." *A Pleasant Trip Store*, 2020 WL 2227016, at *4; *see also Pearson Educ., Inc.*, 2020 WL 3547217, at *9 (approving exercise of personal jurisdiction where "[defendant] has not offered *any* argument that other considerations would render jurisdiction unreasonable here.") (emphasis in original and citations omitted). The Court notes, however, that the third through fifth factors weigh in favor of the exercise of personal jurisdiction here. Plaintiff has a strong interest in obtaining relief for the alleged trademark infringement, this suit is "the most efficient path" to resolving the parties' dispute, and the substantive policies underscored by the Lanham Act weigh in favor of personal jurisdiction in this case. *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.,* LLC, No. 15 Civ. 8459 (LGS), 2016 WL 3748480, at *4 (S.D.N.Y. July 8, 2016). Modern travel accommodations also ease the burden of a New York forum on faraway defendants. *Alcon Labs., Inc. v. Lens.com, Inc.*, No. 18 Civ. 407 (NG) (RLM), 2019 WL 254038, at *4 (E.D.N.Y. Jan. 17, 2019).

Because the exercise of personal jurisdiction over the Orel Defendants complies with New York's long-arm statute and comports with Due Process, their motion to dismiss the complaint for lack of personal jurisdiction is denied.[4]

### B.     Plaintiff Sufficiently States its Claims against the Orel Defendants

The Orel Defendants' sole argument for dismissal of Plaintiff's four causes of action for failure to state a claim is that trap purchases that were not shipped could not have proximately caused any damages to Plaintiff.[5]  Doc. 20-1 at 14-15.  This argument is without merit.  In *Chanel, Inc. v. RealReal, Inc.*, --- F. Supp.3d ---, 2020 WL 1503422, at *14 n.24 (S.D.N.Y. Mar. 30, 2020), this Court rejected the same argument finding that Chanel's assertion of reputational harm resulting from RealReal reselling counterfeit Chanel products as though authentic sufficiently established proximate cause.[6]  *Id.*  Here, too, Plaintiff has alleged that the Orel Defendants have harmed its reputation by deceiving consumers *other than* Plaintiff into believing that their infringing, lesser quality products are genuine Slinky products.  Doc. 5 at ¶¶ 38-41, 78.

Thus, the Orel Defendants' motion to dismiss the complaint for failure to state a claim is also denied.

---

[4] Having determined that personal jurisdiction is proper under § 302(a)(1), the Court need not consider whether it would exist under § 302(a)(3) and Fed. R. Civ. P. 4(k), the alternative bases Plaintiff alleged in the complaint.  *See, e.g.*, *Pearson Educ., Inc.*, 2020 WL 3547217, at *4 ("Because the Court concludes that personal jurisdiction is proper under § 302(a)(1), it need not determine whether it would also be proper under § 302(a)(3).").

[5] The Orel Defendants do not otherwise challenge that Plaintiff has sufficiently plead its claims.  Doc. 36 at 9-13 (addressing the elements of trademark infringement and false designation of origin claims).

[6] The Orel Defendants again rely *SPV OSUS Ltd. v. UBS AG*, 882 F.3d at 345-46, which is inapposite. Doc. 20-1 at 15.  Unlike this case, *SPV OSUS Ltd.* did not involve the Lanham Act or common law unfair competition, and instead addressed one "chapter in the Bernie Madoff saga" including claims of aiding and abetting fraud and breach of fiduciary duty which *require* showing that the aidor/abettor proximately caused the harm alleged.  *Id*. at 337, 345-46.  Proximate cause is not an element of Plaintiff's claims. *Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 WL 5345814, at *5 n.15 (S.D.N.Y. Sep. 24, 2013).

**IV.     Conclusion**

In Sum, the Orel Defendants' motion to dismiss for lack of personal jurisdiction and failure to state a claim is denied in its entirety.  The parties are directed to appear telephonically for a status conference on September 22, 2020 at 11:30 a.m. using the following conference call information:  (877) 411-9748; 3029857#.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 20.

SO ORDERED.

Dated:    September 4, 2020
         New York, New York

_____
Edgardo Ramos, U.S.D.J.