UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUST PLAY, LLC,

                Plaintiff,

        v.

A.S. PLASTIC TOYS CO., LTD., et al.,

                Defendants.

**OPINION AND ORDER**

19 Civ. 9399 (ER)

Ramos, D.J.:

Just Play, LLC[1] brought this action against numerous defendants for trademark infringement of its iconic toy, the Slinky. Doc. 5. On February 8, 2021, several of these defendants, all represented by attorney Sergei Orel—the Orel Defendants—filed an answer and counterclaims.[2] *See* Doc. 60. Pending before the Court is Just Play's motion to dismiss the Orel Defendants' counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is unopposed. For the reasons set forth below, Plaintiff's motion is GRANTED.

### I. BACKGROUND

---

[1] The original plaintiff in this case was Poof-Slinky, LLC. During the course of this action, the Slinky trademarks were assigned from Poof-Slinky to an entity called Just Play, LLC. *See* Doc. 83. As a result, on August 12, 2021, Plaintiff moved to substitute Just Play for Poof-Slinky pursuant to Federal Rule of Civil Procedure 25(c). *See id.* The Court granted the motion to substitute. Doc. 84.

[2] The thirty-four Orel Defendants include A.S. Plastic Toys Co. Ltd., Amy & Benton Toys And Gifts Co., Ltd., Believe-Fly Trading (Toys) Co., Ltd. Shantou, GREAT INTERNATIONAL TOYS LIMITED, Guangdong Hershey Spring Industrial Co., Hengjun Plastic Toys Manufactory, hhsmile Store, Longyan Lang Ling Hong Chuang Trading Co., Ltd., nbjustin Store, Ningbo ZhenRong International Trading Co., Ltd. (JUST IN), Shantou Chenghai Haoda Toys Co., Ltd., Shantou Chenghai Hengya Toys Co., Ltd., Shantou Chenghai Kaishenglong Toys Factory, Shantou Chenghai Pengcheng Toy Ind. Co., Ltd., Shantou Chenghai Sweet Baby Toys Firm, Shantou Chenghai Yuansheng Toys Industry Co., Ltd., Shantou Chenghai Yueqi Toys Firm, Shantou City Chenghai Xinbooming Toys Factory, Shantou H&C Toys & Crafs Manufactory, Shantou Jinyu Trading Co., Ltd., Shantou Kunyang Trading Co., Ltd., Shantou Longhu XuChang Toys Firm, Shantou Lucky Toys & Gift Firm, Shantou Mingtong Toys Industrial Co., Ltd., Shantou South Toys Factory, Shantou Tianyi Toys Industrial Co., Ltd., Shaoxing Jinlangte Sports Goods Co., Ltd., Shenzhen Gift Joint Promo Co., Ltd., Shenzhen X-World Technology Co., Ltd., Wenling Bestone Commodity Factory, Yiwu B&T Crafts & Arts Co., Ltd., Yiwu Power Import & Export Co., Ltd., Yiwu Qida Household Items Factory, and Zhangping TK Toys And Gifts Co., Ltd.

Slinky is a precompressed helical spring toy.  Doc. 70 at 1.  Plaintiff sells its Slinky products through Alex Toys LLC and major retailers like Target and Amazon.  *Id.*  Plaintiff has secured three federal trademark registrations to protect its rights.[3]  Doc. 5 at 12.

Plaintiff retained New Alchemy Limited ("NAL"), a company that researches intellectual property infringement, to determine whether counterfeit versions of its products could be found on Alibaba.com ("Alibaba") and AliExpress.com ("AliExpress").  *Id.* at Glossary, 29.  Alibaba and AliExpress are online marketplace platforms that allow sellers in China to advertise and sell products worldwide.  *Id.* at Glossary.  Defendants are individuals or businesses located in China but doing business in the United States, including New York, and elsewhere via user accounts on Alibaba and AliExpress.  *Id.* at 6, 24, 30.  Through NAL's research, Plaintiff discovered that the Orel Defendants, among other defendants, were selling counterfeit Slinky products that were meant to confuse consumers and trade on the goodwill of Slinky.  *Id.* at 25, 30, 35-40.

On October 16, 2019, Plaintiff served defendants with a summons, complaint, a temporary restraining order ("TRO") signed by the Court on October 10, 2019, and all papers filed in support of its application for a preliminary injunction against all defendants.  Doc. 15.  The Court held a show cause hearing on October 24, 2019.  Mr. Orel made an appearance and represented that he had been retained to represent sixteen unidentified defendants—and possibly more.  Doc. 27 at 1.  He requested an extension of time to oppose the preliminary injunction, which the Court granted until November 7, 2019 for all defendants, keeping the TRO in place until that time.  *Id.*

---

[3] On November 17, 2003, Plaintiff acquired U.S. Trademark Registration Nos. 1,455,493 and 2,402,881 for Slinky and the Slinky Arch following its merger with James Industries, Inc.  Doc. 5 at 13 & n.4, p. 31.  Plaintiff was then awarded the Trademark Registration No. 5,286,991 for the Rainbow Slinky on September 12, 2017.  *Id.* at 13.

On November 27, 2019, Mr. Orel filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) on behalf of the thirty-four defendants. Doc. 20. Plaintiff requested an extension of time to file an opposition to the motion, and also requested that the Court enter an order preliminarily enjoining all defendants not represented by Mr. Orel and that the Court extend the TRO against the Orel Defendants pending the outcome of the motion to dismiss. Doc. 27. On December 13, 2019, the Court granted Plaintiff's requests, *see* Doc. 28, and on September 4, 2020, the Court denied the Orel Defendants' motion to dismiss. Doc. 47.

On February 8, 2021, the Orel Defendants filed an answer and four counterclaims, alleging Plaintiff's trademarks are invalid, Plaintiff engaged in an unlawful taking of their property, and Plaintiff tortiously interfered with their prospective economic advantage and their contractual relationships. Doc. 60. On April 8, 2021, Plaintiff moved to dismiss the counterclaims for failure to state a claim. Doc. 69. The Orel Defendants do not oppose the motion.[4]

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a plaintiff must allege sufficient facts to show "more than a sheer

---

[4] On June 1, 2021, the Orel Defendants wrote that a "strategic decision has been made by the defendants to not waste further attorneys fees in opposing Plaintiff's Motion to Strike Defendants' Counterclaim." Doc. 78 at 3.

possibility that a defendant has acted unlawfully," *id.*, "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citations and internal quotation marks omitted). Consequently, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all plausible and nonconclusory factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . .").

Rule 12 of the Federal Rules of Civil Procedure applies equally to claims and counterclaims. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) ("As to content, a . . . counterclaim, like all pleadings, must conform to the pleading requirements of Twombly and Iqbal."). Hence, in evaluating a motion to dismiss counterclaims in an answer, the Court relies on the same legal principles applicable to motions to dismiss claims in a complaint.

"In deciding an unopposed motion to dismiss, a court is to assume the truth of a pleading's factual allegations and test only its legal sufficiency, [which] the court is capable of

determining based on its own reading of the pleading and knowledge of the law." *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall v. Pataki*, 232 F.3d 322 (2d Cir. 2000)).

### III. DISCUSSION

#### a. Invalidity of Plaintiff's Trademarks

As to their first counterclaim, the Orel Defendants argue Plaintiff's trademarks have become generic and, as such, the Court should dismiss the complaint, declare the trademarks invalid, cancel the trademarks, and award the Orel Defendants damages as well as fees and costs. Doc. 60 at 11. According to the Orel Defendants, Plaintiff's Slinky trademarks have "lost their strength," as consumers now "refer to Plaintiff's toy as a 'slinky,' where[as] Plaintiff's trademark 'slinky' is being used in the marketplace as a noun, and not as an adjective." *Id.* The Orel Defendants do not further explain this reasoning, nor do they offer any other support for their claim that Plaintiff's trademarks have become generic.

In response, Plaintiff explains its trademarks, having been registered, are presumed not generic, and its Trademark Registration certificates provide *prima facie* evidence of the validity of its trademarks. Doc. 70 at 7-8; *see Reese Pub. Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980); 15 U.S.C. § 1115(a); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). As such, Plaintiff argues its trademarks are incontestable and that it has valid and exclusive rights in and to them. *Id.* at 8.

Because Plaintiff's trademarks are registered,[5] the Orel Defendants bear the burden of overcoming the presumption that the trademarks are not generic. *Reese*, 620 F.2d at 11.

---

[5] *See supra* note 3.

Whether a trademark has become generic turns on "how the purchasing public views the mark." *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 215 (2d Cir. 2003). Specifically, a trademark is only generic where, to the public, "the principal significance of the word"—here, "slinky"—is "its indication of the nature or class of an article, rather than an indication of its origin." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 144 (2d Cir. 1997) (citation and internal quotation marks omitted). To demonstrate this, a party seeking to show a trademark is generic can point to a number of sources, including consumer surveys, testimony of consumers or trade professionals, dictionary definitions, newspapers and other publications, generic use by competitors, and generic use of the term by mark's owners. *Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432, 440 (S.D.N.Y. 1989) (internal citations omitted).

As the Orel Defendants have not put forth any of the above-listed evidence and, indeed, have not alleged any facts to show that the Slinky trademarks are generic, beyond the conclusory allegation that the trademarks have "lost their strength," they have not met their burden, and their counterclaim that Plaintiff's trademarks should be declared invalid fails.

### b. Unlawful Taking of Defendants' Property

As to their second counterclaim, the Orel Defendants argue that Plaintiff, in filing its complaint, caused Alibaba and AliExpress to shut down Defendants' online stores and to freeze their accounts. Doc. 60 at 10. The Orel Defendants contend that this amounts to an unlawful taking of their property—namely, their money and their ability to continue trading on Alibaba and AliExpress. *Id.* at 12. As such, the Orel Defendants urge the Court to dismiss Plaintiff's complaint, compensate them for the loss of property, and award them damages as well as costs. *Id.*

To establish an unconstitutional taking, the Orel Defendants have to show that their property was taken under color of state law without due process or just compensation. *See Port Chester Yacht Club, Inc. v. Iasillo*, 614 F. Supp. 318, 321 (S.D.N.Y. 1985). They fail to do so. Here, the Orel Defendants object to the Court's granting of a TRO—including an order restraining Defendants' assets, *see supra* Section I. This asset restraint is not a taking, but is a Court order pursuant to Federal Rules of Civil Procedure 64 and 65 and this Court's inherent equitable authority to issue a prejudgment asset freeze, upon a showing of sufficient cause. *See Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014). Nowhere in their answer do the Orel Defendants allege they were denied due process when the Court imposed the asset restraint. As such, the Orel Defendants' second counterclaim is dismissed.

### c. Tortious Interference with Prospective Economic Advantage

As to their third counterclaim, the Orel Defendants argue that Plaintiff, in causing Alibaba and AliExpress to shut down the Orel Defendants' online stores, tortiously interfered with their prospective economic advantage. Doc. 60 at 10.

Under New York law, in order to prevail on a claim for tortious interference with prospective economic advantage, a plaintiff "must show that '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'" *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)). New York courts have rejected claims containing "only a general allegation of interference with customers without any sufficiently particular allegation of interference with a

7

specific contract or business relationship." *Id.* at 262 (citing *McGill v. Parker,* 179 A.D.2d 98, 105 (1992)).

Beyond this, New York courts have generally held that the defendant's wrongful conduct must "amount[] to a crime or an independent tort," *id.* (citing *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190 (2004)), although other courts have held that "such acts are not essential to find wrongful means." *Catskill Dev.,* 547 F.3d at 132 (citing *Hannex Corp. v. GMI, Inc.,* 140 F.3d 194, 206 (2d Cir.1998)). The wrongful conduct must be directed "at the party with which the plaintiff has or seeks to have a relationship," rather than at the plaintiff. *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, No. 07 Civ. 9694 (LAP), 2009 WL 1110783, at *2 (S.D.N.Y. Apr. 21, 2009) (citing *Carvel*, 3 N.Y.3d at 192)).

Here, the Orel Defendants allege that they had business relations with "Alibaba, AliExpress, and [their] customers" and argue that Plaintiff caused Alibaba and AliExpress to shut down the Orel Defendants' online stores, depriving them of their property and their "ability to continue trading on Alibaba and AliExpress." Doc. 60 at 10. But the Orel Defendants do not allege that Plaintiff acted for a wrongful purpose or used improper means—let alone wrongful conduct that amounts to a crime or independent tort—nor do they point to any specific injury caused by the alleged interference.

As such, the Orel Defendants' counterclaim for tortious interference with prospective economic advantage is dismissed. *See, e.g.*, *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) (affirming dismissal of claim for tortious interference with prospective economic advantage for failure to "allege such intentional interference"); *Armored Grp. LLC v. Homeland Sec. Strategies, Inc.*, No. 07 Civ. 9694 (LAP), 2009 WL 1110783, at *2 (S.D.N.Y.

8

April 21, 2009) (dismissing claim for tortious interference for failure to allege any wrongful means or violation of any duty independent of the contract); *Watson v. Riptide Worldwide, Inc.*, No. 11 Civ. 0874 (PAC), 2012 WL 383946, at *7 (S.D.N.Y. Feb. 7, 2012) (dismissing claims for tortious interference as "fall[ing] short of the level of culpability required to state a claim for tortious interference with prospective economic advantage."); *Krinos Foods, Inc. v. Vintage Food Corp.*, 30 A.D.3d 332, 333 (2006) (finding plaintiff's allegation that defendant interfered with business relationships insufficient because it failed to show that defendant used wrongful means).

### d. Tortious Interference with Contractual Relationships

As to their fourth counterclaim, the Orel Defendants argue that Plaintiff tortiously interfered with Defendants' contractual relationships. Doc. 60 at 13. As this claim requires a showing of the same elements listed above—those required for a claim of tortious interference with prospective economic advantage[6]—and as the Orel Defendants have failed to allege that Plaintiff used any wrongful means, the fourth counterclaim is dismissed. *See Catskill Dev.,* 547 F.3d at 132.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff's motion to dismiss the Orel Defendants' counterclaims is GRANTED.

---

[6] To prevail on a claim for tortious interference with contractual relationships, a plaintiff must show that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev.,* 547 F.3d at 132. Unlike claims of tortious interference with prospective economic advantage, a claimant here need *not* show that the wrongful conduct amounted to a crime or independent tort.

9

      The parties are directed to appear for a telephonic status conference on March 18, 2022 at 3:30 PM.  The parties are to dial (877) 411-9748 and enter access code 3029857# when prompted.

      The Clerk of Court is respectfully directed to terminate the motion, Doc. 69.

      It is SO ORDERED.

Dated:   Feburary 25, 2022
           New York, New York

                                                          EDGARDO RAMOS, U.S.D.J.